# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                       Case No. 10-30558-WRS
                                                            Chapter 7

McINTYRE BUILDING
COMPANY INC.,

       Debtor

McINTYRE LAND COMPANY INC.,

       Plaintiff                                    Adv. Pro. No. 10-3029-WRS

  v.

McINTYRE BUILDING COMPANY
INC., et al,

       Defendants

## <u>MEMORANDUM DECISION</u>

This Adversary Proceeding came before the Court for hearing on Plaintiff McIntyre Land

Co., Inc.'s Motion to Stay Pending Appeal on March 22, 2011. (Doc. 66). McIntyre Land seeks

to stay proceedings in this Adversary Proceeding pending its interlocutory appeal of this Court's

Order of February 7, 2011, (Docs. 57, 58) which, among other things, denied McIntyre Land's

motion to remand its civil action to State Court. For the reasons set forth below, the Plaintiff's

Motion to Stay Pending Appeal is DENIED.

## I. FACTS

### A. The First Complaint

McIntyre Building Company, Inc., (McIntyre Building) filed a petition in bankruptcy

pursuant to Chapter 11 of the Bankruptcy Code on March 6, 2010. (Case No. 10-30558, Doc.

1).[1]  In schedules filed with the court, McIntyre Building reports holding assets which it values at $9.5 million, almost all of which is real property.  It also reports owing more than $20 million in debt, most of which is secured by real property.  (Case No. 10-30558, Doc. 25).  On Schedule A, McIntyre Building claims to own 12 parcels of real property, including a parcel on County Road 85 in Prattville, Alabama, described as 165 acres, (actually 161 acres) which McIntyre Building valued at $330,000.[2]  This Adversary Proceeding centers on the 161 acre parcel.  McIntyre Building converted its Chapter 11 case to a case under Chapter 7 on September 20, 2010.  (Case No. 10-30558, Doc. 87).  Shortly thereafter, Susan S. DePaola was appointed as Trustee.  (Case No. 10-30558, Doc. 88).[3]

On April 15, 2010, McIntyre Land Company, Inc., filed a complaint (first complaint) in this Court, initiating this Adversary Proceeding against McIntyre Building, Innes McIntyre, IV and Branch Banking and Trust Co., Inc.  (Doc. 1).  The complaint alleges that Colonial Bank issued a loan commitment to Innes McIntyre, McIntyre Building and McIntyre Land to renew a loan to McIntyre Building.  (Doc. 1, para. 8).  McIntyre Land alleges that the commitment provided that the 161 acre parcel owned by McIntyre Building was to be encumbered by a mortgage and that the Prattville Square Shopping Center, which is owned by McIntyre Land, was

---

[1]  References to the Docket in this Adversary Proceeding (Adversary Proceeding 10-3029, shall be to the docket number only.  References to all other cases and Adversary Proceedings shall be preceded by the Case Number.

[2]  In other proceedings related to this parcel, it was shown that it actually consists of 161 acres.  The property is unimproved.  Susan DePaola, the Chapter 7 Trustee for McIntyre Building, moved to sell the property for $210,000.  (Case No. 10-30558, Doc. 112).  BB&T objected and a hearing was held on March 29, 2011.  At the conclusion of the hearing, the Court overruled the objection of BB&T and granted the Trustee's motion.  (Case No. 10-30558, Doc. 126).  Assuming that the sale of the property closes as anticipated, the Trustee will hold the $210,000 in lieu of the subject property.  If McIntyre Land ultimately prevails on its claim, described below, BB&T may have its mortgage released from the Prattville Shopping Center property and placed instead upon the 161 acre parcel, which has been converted to cash in the amount of $210,000.

[3]  As Trustee, Susan DePaola is substituted as the named party in place of Debtor McIntyre Building.

2

to be released. (Doc. 1, para 9-10). The existing loan was $3.1 million. (Doc. 1, para 12). In the first complaint, McIntyre Land sought a declaration that the Colonial mortgage does not encumber the Prattville Square Shopping Center and that the $3.1 million indebtedness to Colonial encumbers the 161 acre parcel in Autauga County. This declaration, if granted, would have the effect of encumbering property of the estate of McIntyre Building and freeing property owned by McIntyre Land.

## B. The Parties

As the relationship among the parties is important here, it is appropriate to provide some background on them and describe their relationships to one another. Innes McIntyre, IV is an individual who resides in Montgomery, Alabama and has been in the business of developing real estate. Innes McIntyre filed a petition in bankruptcy on March 8, 2010, two days after McIntyre Building filed its petition. (Case No. 10-30570). Innes McIntyre has filed schedules in his bankruptcy case claiming that he owns McIntyre Building. (10-30570, Doc. 16, Sch. B). He does not claim any ownership interest in McIntyre Land. Id. At a hearing held June 8, 2010, the Court inquired of counsel as to who owned McIntyre Land and was advised that it was Mrs. McIntyre, the wife of Innes McIntyre.[4] If we disregard for a moment the corporate fictions, the Adversary Proceeding is really Mrs. McIntyre versus Mr. McIntyre and the Bank. Mrs. McIntyre and McIntyre Land are not in bankruptcy, while Mr. McIntyre and McIntyre Building are.

The relationship between the parties and the fact that the relief requested would have the effect of transferring property out of a bankruptcy estate to an entity controlled by a debtor's wife

---

[4] McIntyre Land failed to file a Corporate Disclosure Statement pursuant to Bankruptcy Rule 7007.1.

3

naturally piqued the interest of the Court. At the time of the June 8, 2010 hearing, McIntyre Building was still in a Chapter 11 case and acting as debtor in possession. In other words, no trustee had been appointed to look after the interests of the creditors of McIntyre Building. Insofar as Mrs. McIntyre was in effect suing Mr. McIntyre to get property out of the estate, the Court was concerned that Mr. McIntyre might be less than zealous in defense of the interests of the creditors and roll over, permitting his wife to win. Schedule I in the Innes McIntyre bankruptcy case indicates that Mrs. McIntyre shares a residence with Mr. McIntyre and several minor children and that Mrs. McIntyre is the sole breadwinner for the family. (10-30570, Doc. 16, Sch. I). The undersigned expressed his concern, during the June 8, 2010 hearing, that the transfer contemplated by the complaint might, in effect, be a fraudulent conveyance, as property would be transferred out of a bankruptcy estate for no consideration. The Court's concern that the creditors of McIntyre Building might not be adequately represented has been ameliorated by the appointment of Chapter 7 Trustee Susan DePaola. However, the underlying concern–that the relief requested may be a fraudulent conveyance–remains.

The complaint also alleges a loan commitment made by and a mortgage in favor of Colonial Bank. (Doc. 1, para. 8-12). The complaint does not describe how BB&T came to hold the Colonial mortgage, however, BB&T is named as a Defendant. For purposes of the subject motion to stay proceedings it is not important to distinguish, however, BB&T has a motion to dismiss pending, which the Court will take up at a later time. Therefore, all references will be to BB&T without any effort to distinguish between it and Colonial, the original holder of the mortgage and related indebtedness.

4

## C. The Amended Complaint and Voluntary Dismissal

On August 12, 2010, McIntyre Land filed an Amended Complaint without first seeking leave of court or the agreement of other parties.  (Doc. 18).  BB&T promptly moved to strike the Amended Complaint.  (Doc. 21).  In response to BB&T's motion to strike, McIntyre Land moved to voluntarily dismiss its complaint, without prejudice.  (Doc. 30).  The Court granted McIntyre Land's motion for voluntary dismissal on October 21, 2010.  (Docs. 35, 36).  At the time the Court entered the order of dismissal, the undersigned was not aware that BB&T had filed an Answer and Counterclaim.  (Doc. 34).  Within a few hours of entry of the order of dismissal, the undersigned learned of the Answer and Counterclaim.  On October 22, 2010, the Court entered a notice of hearing, sua sponte, to hear argument on the question of whether it should reconsider its dismissal in light of the BB&T counterclaim.  On February 7, 2011, the Court entered an order vacating its order of dismissal.  (Docs. 57, 58).

## D.  The State Court Complaint and Removal to this Court

On October 26, 2010, McIntyre Land filed a complaint in the Circuit Court of Montgomery County, Alabama.[5]  McIntyre Land alleges that BB&T holds a mortgage on the Prattville Square Shopping Center as successor in interest to Colonial Bank.  (10-3084, Doc. 1, Complaint, para. 7).  The complaint further states that:

---

[5]  This is actually the third complaint that McIntyre Land has filed concerning what is in essence the same subject matter.  That complaint is captioned McIntyre Land, Co., Inc., v. Branch Bank and Trust, Inc., Mississippi Valley Title Insurance Company, Pro Abstract, Inc., First American Title Insurance Company, Inc., Case No. CV-2010-901388.

5

> In 2006, co-Defendants McIntyre Building Company and Innes McIntyre as well as MLC entered into an agreement with BB&T. That agreement required BB&T to release its mortgage on Prattville Square Shopping Center and, in turn, McIntyre Building agreed to encumber a 165 acre parcel of property located in Prattville, Alabama with a mortgage loan with BB&T.

(10-3084, Doc. 1, Complaint, para 8). Careful examination of the compliant filed in State Court reveals that it seeks to enforce the same agreement as was referenced in the complaint which referenced this Adversary Proceeding. The State Court complaint is ambiguous in that it does not name, in its caption, either McIntyre Building or Innes McIntyre, however, both parties are described as co-defendants in the body of the State Court complaint. Id. The State Court complaint seeks a determination which would encumber property of the bankruptcy estate of McIntyre Building and would bind the Trustee.

BB&T promptly removed the State Court proceeding to this Court, which was renumbered Adversary Proceeding 10-3084. McIntyre Land responded, moving to remand to State Court. (10-3084, Doc. 8). BB&T opposed remand and moved to consolidate Adversary Proceeding 10-3084 with 10-3029, contending that both proceedings involve the same subject matter. (Doc. 41). On February 7, 2011, this Court entered an order vacating its prior order of voluntary dismissal, granting BB&T's motion to consolidate this Adversary Proceeding with 10-3084 and denying McIntyre Land's Motion to Remand. (Docs. 57, 58). On February 22, 2011, McIntyre Land filed a motion for interlocutory appeal (Doc. 65) and a Motion to Stay Pending Appeal. (Doc. 66). For the reasons set forth below, the Motion to Stay Pending Appeal is DENIED.

## II. LAW

McIntyre Land seeks to stay proceedings in this Adversary Proceeding pending its interlocutory appeal to the District Court, and perhaps beyond. To obtain its stay, McIntyre Land must satisfy two sets of requirements. First, it must satisfy the four-part test applicable to any stay of an order of judgment of a court. These requirements apply both to stays pending interlocutory appeals and stays pending appeal of final orders. The four-part test will be discussed in part II(A) below. Second, in part II(B) below, McIntyre Land must also show that it is entitled to bring an interlocutory appeal. These requirements are in addition to and not in lieu of the requirements in part II(A). The three-part test for an interlocutory appeal must be satisfied in addition to the four part test. The failure on any one element of either test is fatal to McIntyre Land's motion. See, Turner v. Frascella Enterprises, Inc., (In re Frascella Enterprises, Inc.), 388 B.R. 619, 622-24 (Bankr. E.D. Pa. 2008) (applying the three-part test for interlocutory appeals as part of the requirement for probability of success on the merits in the four part test for stays pending appeals); Jet Networks FC Holding Corp. v. Goldberg, 2009 WL 1616375, *2 (S.D. Fla. Jun. 9, 2009) ("The movant must show satisfactory evidence on all four criteria, and the failure to satisfy one prong is fatal to the motion." (internal citations omitted)). In Part II(C), the Court will discuss the well-pleaded complaint rule and explain why it should have no application here.

### A. Stay Pending Appeal–the General Rule

McIntyre Land has moved this Court to stay proceedings pending the outcome of its interlocutory appeal. Bankruptcy Rule 8005 governs stays pending appeal and provides as follows:

7

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge *may* suspend *or order the continuation* of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

Fed. R. Bankr. P. 8005 (emphasis added).

To obtain a stay pending appeal, the movant must clearly establish four elements:

(1) That the movant is likely to prevail on the merits of its appeal;

(2) That the movant will suffer irreparable injury if a stay is not granted;

(3) That other parties will suffer no substantial harm if a stay is granted; and

(4) In circumstances where the public interest is implicated, the issuance of a stay will serve, rather than disserve such public interest. In re Land Ventures for 2, 2010 WL 4176121 (M.D. Ala. Oct. 18, 2010) (denying motion for stay pending appeal, stating that "the grant of a stay pending appeal is an exceptional response"); In re Forest Oaks, LLC, 2010 WL 1904340, *2 (S.D. Ala. May 10, 2010); Tooke v. Sunshine Trust Mortgage Trust, 149 B.R. 687, 689 (M.D. Fla. 1992); In re F.G. Metals, Inc., 390 B.R. 467, 471-72 (Bankr. M.D. Fla 2008); In re Chater Co., 72 B.R. 70, 71-72 (Bankr. M.D. Fla. 1987).

## 1.  Likelihood of Success on the Merits

While the courts may give greater weight to some of the four factors over the others, see Jet Networks, 2009 WL 1616375 at *2, a finding of likelihood of success on the merits is a prerequisite for granting a stay. Id. (citing Henkel v. Lickman (In re Lickman), 301 B.R. 739, 742 (Bankr. M.D.Fla. 2003)).  The appellant must normally show that likelihood of success on

8

the merits is "probable," which is a high standard because it requires a finding that the lower court's ruling was clearly erroneous. In re Forest Oaks, LLC, 2010 WL 1904340 at *3 (citing Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986)); see also In re Rabin, 2007 WL 1098785 (Bankr.S.D.Fla. Apr.9, 2007); In re Arnal, 2003 WL 22709326, *1 (Bankr. S.D.Ga. Jul. 30, 2003). Only when a balancing of the equities, factors 2 through 4, supports granting a stay, may the standard for likelihood of success be lowered to a "substantial case on the merits." In re Arnal, 2003 WL 22709326 at *1. As will be shown in the following sections, this lower standard is not applicable because the appellant, McIntyre Land, does not succeed on factors 2 and 4, therefore, the Court will proceed under the higher standard.

The appellant has not shown that a likelihood of success on the merits is probable. The focus of McIntyre Land's argument is that this Court lacks subject matter jurisdiction to hear the State Court complaint and erred in denying McIntyre Land's motion to remand. "A 'likelihood of success is shown when the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for litigation and thus for more deliberate inquiry.'" In re Advanced Telecommunication Network, Inc., 2011 WL 722766, *2 (M.D.Fla. Feb. 23, 2011) (citing In re Lickman, 301 B.R. 739 at 743 (quoting Pub. Utils. Comm'n v. Yellow Cab Coop. Ass'n (In re Yellow Cab Coop. Ass'n), 192 B.R. 555, 557 (D.Colo.1996)). While the question of subject matter jurisdiction is serious and substantial, the following facts show that it this case, this question is not one that is difficult or doubtful — the appellant's complaint brings the adversary proceeding under this Court's jurisdiction.

This Court concluded in its February 7 Memorandum Decision that it has subject matter jurisdiction citing 28 U.S.C. § 1334(e), which provides, in part, that:

9

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

In the State Court complaint, McIntyre Land describes an agreement to which McIntyre Building was a party and property owned by McIntyre Building, which is now property of the estate, and contends that it was harmed because BB&T breached its promise to release its mortgage on the Prattville Square property and simultaneously take a mortgage on the 161 acres in Autauga County. McIntyre Land seeks to hold BB&T to its bargain and obtain relief which results in a mortgage being placed on property of the estate.[6] As the Court reads the record here, the State Court complaint falls squarely within the jurisdiction afforded it pursuant to 28 U.S.C. § 1334(e)(1).

McIntyre Land argues that its civil action will have no effect upon McIntyre Building or property of the estate. Rather, it contends that it seeks nothing more than to quiet title to the Prattville Square Shopping Center and to obtain monetary damages or other relief solely against BB&T. McIntyre Land contends that it seeks nothing from the Bankruptcy Court or property of the estate. McIntyre Land casts its State Court complaint in terms of fraud, alleging misrepresentations by BB&T and others. However, the alleged misrepresentations are all made in connection with loans, mortgages, loan commitments and other contracts. Absent the

---

[6] BB&T denies that there was any such agreement. The existence or nonexistence of the agreement is a question for another day. At this stage, the Court assumes that the well pleaded factual allegations contained in the complaint are true. Without the existence of this agreement, BB&T has no duty to release the mortgage and any attendant statements would not be actionable, whether true or not. While the complaint of McIntyre Land is not cast in terms of a breach of contract, BB&T has no duty to act unless there is a contract.

existence of these contracts, BB&T has no duty either to speak or act.[7]  As these contracts,

mortgages and loans are in issue in proceedings before the Court, there is a very real possibility

that the State Court would, if remand was granted, make findings that would affect property of

the estate of McIntyre Building.  As such, it is not difficult to see nor doubtful that this Court has

subject matter jurisdiction over these proceedings and its February 7 Order was the correct

decision.  For this reason, this Court concludes that it is not probable that McIntyre Land is likely

to succeed on the merits and therefore has not satisfied this first factor.

Since the appellant, McIntyre Land, has failed to satisfy the first factor, this Court could

simply end its discussion here, but because this case is one where the Court finds its every move

questioned by the appellant, it will proceed with a review of the other factors.

## 2.  Irreparable Harm

"An injury is 'irreparable' only if it cannot be undone through monetary remedies . . . .

Mere injuries, however substantial, in terms of money, time and energy necessarily expended in

the absence of a stay are not enough."  In re Advanced Telecommunication Network, Inc., 2011

WL 722766 at *3 (citing Cunningham v. Adams, 808 F.2d 815, 821 (11th Cir.1987) (quoting

Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974))).  Moreover, "[t]he

irreparable harm must be neither remote nor speculative, but actual and imminent."  Id. (quoting

In re Lickman, 301 B.R. at 748 (internal quotations omitted) (citation omitted)).

---

[7]  A possible reason that McIntyre Land would attempt to cast its claims in terms of fraud rather than breach of
contract is that BB&T has raised the defense of statute of frauds.  At this stage, it is not important whether McIntyre
Land's claims are cast in terms of contract or fraud.  What is important here is that there will be an effect on property
of a bankruptcy estate.

McIntyre Land focuses its arguments solely on its contention that this Court erred when it denied the motion to remand to State Court. It makes no argument that it will suffer irreparable harm if the Court does not grant a stay and the Court is unable to discern any. Even if McIntyre Land were correct in its contention that the Court erred, which this Court does not concede, a stay would nevertheless be denied because of the lack of irreparable harm. The Court sees no actual or imminent harm on the horizon if the case proceeds, much less a harm that could not be remedied with money. To state the matter differently, if McIntyre Land cannot show irreparable harm its motion to stay must be denied, even it if shows that the Court erred because the four prong test imposes conjunctive conditions. The failure to establish any one prong necessary results in denial of the motion. <u>Jet Networks FC Holding Corp.</u>, 2009 WL 1616375 at *2.

The Bankruptcy Court intends to proceed with this litigation. If BB&T ultimately prevails, McIntyre Land may appeal the question of subject matter jurisdiction after entry of a final order. If all potentially dispositive interlocutory orders were instantly appealable, without a showing of irreparable harm, civil litigation would become bogged down with innumerable appeals. As McIntyre Land will not suffer irreparable harm if a stay is not granted, its motion for stay necessarily fails.

### 3. Other Parties Will Suffer No Substantial Harm

The third element, substantial harm to other parties is present. A stay would simply put this Adversary Proceeding on ice until the interlocutory appeal was decided. No party would suffer substantial harm by delaying these proceedings.

### 4. Public Interest

At first glance, it appears neither the grant nor denial of a stay here would have any effect upon the public interest because this Adversary Proceeding affects only the interests of private parties. <u>See</u>, <u>generally</u> <u>In re Advanced Telecommunication Network, Inc.</u>, 2011 WL 722766 at *3. However, courts that have considered public interest in a private two-party dispute have analyzed the public interest factor in two ways. First, the fact that the dispute is between two private parties means that a resolution would not have an impact on public interest and thus, not serve the public interest. As such, the lack of impact means that this factor does not swing in favor of the movant seeking the stay. <u>In re Forest Oaks, LLC</u>, 2010 WL 1904340 at *3.

The second approach looks at the public's interest to see a quick, efficient resolution of bankruptcy proceedings: "[t]here is [] a 'great public policy' in ensuring bankruptcy cases continue to an 'orderly, efficient resolution to maximize and preserve the estate's assets.'" <u>In re F.G. Metals, Inc.</u>, 390 B.R. 467, 478 (Bankr. M.D.Fla. 2008) (citing <u>In re Lickman</u>, 301 B.R. at 749 (quoting <u>In re Bankruptcy Appeal of Allegheny Health. Education and Research Foundation</u>, 252 B.R. 309, 331 (W.D.Pa.1999))). Interlocutory appeals are by nature disfavored due to their piecemeal affect on cases and their ability to destroy any sort of efficiency in the proceedings. <u>See</u>, <u>generally</u> <u>In re Charter Co.</u>, 778 F.2d 617, 621 (11th Cir. 1985); <u>Figueroa v. Wells Fargo Bank N.A.</u>, 382 B.R. 814 (S.D. Fla. 2007); <u>accord</u> <u>Dennis, et. al. v. Williamson (In re Williamson)</u>, No. 10-977 (M.D. Ala. Mar. 10, 2011).

In the underlying bankruptcy case, it would be naïve to assume that the Trustee would not be monitoring this litigation as the result would affect the liquidation proceedings and payout

13

percentages to different creditors. Thus, the longer this case drags on, the longer the Trustee is employed in overseeing the liquidation of the underlying bankruptcy and the more of the estate's assets are drained to the detriment of creditors. Thus, there is a public policy interest in seeing this case continue along in an efficient manner and granting a stay would not serve that interest. Therefore, McIntyre Land fails to satisfy this fourth and final prong as well.

### 5. Stay Pending Appeal–Summary

Taking the four elements out of order, it is clear enough that if a stay is entered, no substantial harm would result to other parties, thus element 3 favors McIntyre Land's motion for stay. However, elements 1, 2, and 4 are problematic for McIntyre Land here. As discussed in Part II(A)(1) above, the Court is of the view that McIntyre Land is not likely to prevail on appeal. The interlocutory appeal turns largely on the question of whether this Court has subject-matter jurisdiction. This Court has concluded that it has subject-matter jurisdiction. Admittedly, the point is debatable, but whether an issue is debatable or not is not the standard for likelihood of success on the merits — the standard is "probable." Supra, Part II(A)(I). However, element number 2, irreparable harm, quite clearly weighs against McIntyre Land. The only "harm" arguably suffered by McIntyre Land is that it would be prevented from litigating the question of this Court's subject matter jurisdiction until after a final order was entered. This is no different than the "harm" suffered by any litigant who loses any pretrial motion. This harm is merely that of time, energy, and money, which is not enough to meet the definition of "irreparable harm." Supra, Part II(A)(II). Finally, McIntyre Land has not demonstrated how the public interest would

be served if the stay were granted or disserved if the stay were not granted. Rather, the public interest either remains unaltered or harmed due to the lack of efficiency in the bankruptcy proceedings. Thus, McIntyre Land fails on element 3 as well.

The Court concludes that the motion to stay proceedings filed by McIntyre Land should be denied because it has failed to satisfy three prongs of the four part test. First, McIntyre Land has failed to show that it will likely succeed on the merits. Second, it has failed to show that it will suffer irreparable harm. Third, McIntyre Land has failed to show what effect this stay would have on public interest. The failure on any element is fatal to the motion, McIntyre Land has failed to prove three elements — the motion is denied.

## B. Interlocutory Appeal–The Elements

In addition to meeting the requirements for the issuance of a stay, which the Court has concluded McIntyre Land has not met, since this is an interlocutory appeal McIntyre Land must also satisfy the conditions required of interlocutory appeals. The applicable standard is as follows:

> Interlocutory review is generally disfavored for its piecemeal effect on cases. (citations omitted) Nonetheless, district courts have discretion to grant interlocutory review of bankruptcy court orders if the subject issue:
>
> (1) involves a controlling question of law,
>
> (2) as to which there is a substantial ground for difference of opinion, and

> (3) is such that an immediate appeal would advance the ultimate termination of the litigation.
>
> In re Pac. Forest Prods. Corp., 335 B.R. 910, 919; Babic v. Ford Motor Credit Corp. (In re Ashoka Enters., Inc.), 156 B.R. 343, 346 (S.D. Fla. 1993); Auto Dealers Group v. Auto Dealer Servs., Inc. (In re Auto Auto Dealer Servs., Inc.), 81 B.R. 94, 96 (M.D. Fla. 1987); Am. Cabinets & Woodcrafting Corp. v. Polito Enters., Inc. (In re American Cabinets & Woodcrafting Corp.), 159 B.R. 969, 971 (M.D. Fla. 1993).
>
> Leave must be denied if the party seeking leave to appeal fails to establish any of the three elements.

Figueroa v. Wells Fargo Bank, N.A., 382 B.R. 814, 824 (S.D. Fla. 2007). In the case at bar, McIntyre Land fails on all three elements. First, there is no controlling question of law, as that term is used. Second, there are no substantial grounds for difference of opinion. Third, an immediate appeal will not advance the ultimate termination of the litigation.

## 1. Controlling Question of Law

A controlling question of law is one that "deals with a question of 'pure' law, or matters that can be decided quickly and cleanly without having to study the record." Id. at 824 (citing McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1258, 1260-62 (11th Cir. 2004)). "The term "question of law" does not mean the application of settled law to fact." McFarlin v. ConsecoServs., 381 F.3d at 1258 (citing Ahrenholz v. Board of Trustees of the University of Illinois, 219 F.3d 674, 676 (7th Cir. 2000)).

The legal issue raised by McIntyre Land in its appeal is whether this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(e). The meaning of § 1334 is fairly well

16

established and McIntyre Land has not found any anomaly which calls for immediate resolution by an appellate court.  Rather, McIntyre Land contends that this Court has incorrectly applied the law to the facts of this particular case.  While the issue is undoubtedly important to the parties here, the ultimate outcome will not break any new legal ground.  The Court will address in Part II(C) below, the admittedly novel question raised by McIntyre Land as to the application of the "well-pleaded complaint rule" to this case.  However, the well-pleaded complaint rule, and the question of whether it applies at all in this proceeding, does not rise to a "controlling question of law" which would justify an immediate appeal.  By its very nature, the well-pleaded complaint rule is a rule of interpretation to aid the court in the application of law to a given factual setting, but it is not a substantive rule of law in and of itself.[8]

### 2.  Substantial Ground for Difference of Opinion

To satisfy the second element, McIntyre Land "must show that at least two courts interpret the relevant legal principal differently.  Figueroa v. Wells Fargo Bank, N.A., 382 B.R. 814, 824 (S.D. Fla. 2007).  McIntyre Land has not attempted to make this showing.  Rather, its argument is that this Court should have used the well-pleaded complaint rule in making its determination whether subject matter jurisdiction is present in this proceeding.  In other words, its argument is that the Court has misconstrued or misunderstood its complaint, rather than erred on any question of pure law.

---

[8]  At the March 22, 2010 hearing, counsel for McIntyre Land argued that the well-pleaded complaint rule had constitutional dimensions.  In the Court's view, McIntyre Land has wildly overstated the importance of the well-pleaded complaint rule.

### 3. Immediate Appeal Would Advance the Ultimate Termination

The third requirement is met "if resolution of the controlling question of law substantially reduces the amount of litigation left in the case. Id. at 825-26. "Logically, then, the most compelling grounds for granting interlocutory appeals exist when reversal of the issue on appeal would dispose of the entire bankruptcy case." Id. Such is not the case here. If McIntyre Land was successful in its appeal, its lawsuit would simply move from Bankruptcy Court back to State Court. Not only would this not advance ultimate termination, it would multiply proceedings as there would be proceedings in this Court to determine whether BB&T's mortgage encumbers property of the estate running parallel to proceedings in State Court on McIntyre Land's fraud theory. There would be overlapping factual determinations and the possibility of inconsistent adjudications. Thus, proceedings would be multiplied rather than simplified. In the event of inconsistent adjudications, a distinct possibility here, proceedings could increase exponentially. The simplest and most logical means of resolving the various disputes surrounding the mortgage and properties in question is to consolidate everything here and resolve them in one proceeding. This reason alone compels denial of McIntyre Land's motions both for stay and interlocutory appeal.

### C. The Well-Pleaded Complaint Rule

In several hearings before the Court, as well as in some of its filings, McIntyre Land has made much of the "well-pleaded complaint" rule, and this Court's failure to apply that rule to these proceedings. The Court has two responses to this argument. First, this Court is of the view

18

that the well-pleaded complaint rule does not apply here by its very terms. Second, even if it does, the State Court complaint, which is the one at issue here, explicitly names McIntyre Building as a co-defendant and necessarily implicates property of the estate and the question of whether the mortgage of BB&T does, or should, attach. Even if our inquiry here is limited to the four corners of the State Court complaint, this Court has subject matter jurisdiction based upon a fair reading of that complaint.

The Court's discussion here will be divided into two parts. In part II(C)(1), the Court will review applicable Supreme Court decisions which define and limit the rule. By faithfully observing the limits imposed by the Supreme Court, it is apparent that the rule does not apply here. In Part II(C)(2), the Court will discuss a split in lower court decisions. In one camp, which this Court joins, the well-pleaded complaint rule is either rejected outright, or accepted only in instances were jurisdiction is predicated on one prong of 28 U.S.C. § 1334(b), which deals with claims "arising under Title 11." In the other camp, a number of courts have uncritically accepted the well-pleaded complaint rule and applied it to cases involving bankruptcy proceedings, without any distinction between proceedings "arising under Title 11" and other proceedings within the scope of 28 U.S.C. § 1334.

## 1. Supreme Court Decisions

McIntyre Land contends that this Court should have applied the well-pleaded complaint rule and that had it done so properly, it would have concluded that it did not have subject matter jurisdiction over the State Court complaint and in turn would have granted the motion to remand.

19

McIntyre Land is incorrect on two counts. First, the well-pleaded complaint rule does not apply here because of the nature of the jurisdictional statute in question. Second, even if the well pleaded complaint were applicable, and Court did apply the rule, the Court would nevertheless conclude that it has subject matter jurisdiction and deny the motion to remand.

Before considering whether or how the rule applies, we should attempt to define the rule itself. To begin with, the rule is not codified in the United States Code nor is it a part of the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure. Rather, the rule is a creature of decisional law. The United States Supreme Court has stated the rule as follows:

> We have long held that the presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. A defense is not part of a plaintiff's properly pleaded statement of his or her claim.

Rivet v. Regions Bank of Louisiana, 522, U.S. 470, 475, 118 S.Ct. 921, 925, 129 L.Ed.2d 912 (1998) (citations and internal quotation marks omitted). To put the matter simply, one looks at the face of the complaint and does not anticipate defenses. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Bishop v. Holloway Credit Solutions, LLC, 2009 WL 499390 *2 (M.D. Ala. Feb. 27, 2009). If a given body of facts would support both State and Federal law claims, the plaintiff may plead exclusively State law claims and thereby avoid federal question jurisdiction and remain in State Court.

20

In 1992, the Supreme Court held that the well-pleaded complaint rule applies only to "arising under" jurisdiction pursuant to 28 U.S.C. § 1331. The Supreme Court held as follows:

> First, we can make short work of respondents' argument that the charter's conferral of federal jurisdiction is nevertheless subject to the requirements of the "well-pleaded complaint" rule (that the federal question must appear on the face of a well-pleaded complaint) limiting the removal of cases from state to federal court. Respondents erroneously invoke that rule outside the realm of statutory "arising under" jurisdiction, i.e., jurisdiction based on 28 U.S.C. § 1331, to jurisdiction based on a separate and independent jurisdictional grant, in this case, the Red Cross Charter's "sue and be sued" provision. The "well-pleaded complaint rule applies only to statutory "arising under" cases.

American National Red Cross v. S.G. and A.E., 505 U.S. 247, 257, 112 S.Ct. 2465, 2472, 120 L.Ed.2d 201 (1992). The United States Supreme Court expressly limited the application of the well-pleaded complaint rule to "arising under" jurisdictions, "i.e. jurisdiction based on 28 U.S.C. § 1331." Thus, it would appear that the S.G. and A.E. decision alone is sufficient to foreclose any application of the well-pleaded complaint rule to any case which is not predicated on "arising under" jurisdiction, such as § 1331 jurisdiction. The case at bar falls under this latter category of cases—cases not predicated on "arising under" jurisdiction. Therefore, the S.G. and A.E. decision coupled with the fact that the well-pleaded complaint rule is one created by federal decisional law strongly supports this Court's position that it is not bound to apply the well-pleaded complaint rule to § 1334 cases.

## 2. A Split in Lower Court Decisions

McIntyre Land cites, without any analysis, several decisions lower courts which mention the well-pleaded complaint rule (10-3084, Doc. 27): Malesovas v. Sanders, 2005 WL 1155073

(S.D. Tex. May 16, 2005; <u>Yangming Marine Transport Corp. v. Electri-Flex Company</u>, 682 F.Supp. 368 (N.D. Ill. 1987); <u>Conseco, Inc., v. Adams (In re Conseco, Inc.)</u>, 318 B.R. 425 (Bankr. N.D. Ill. 2004); <u>State of Arkansas Teacher Reitrement System v. Merrill Lynch & Co, Inc.</u>, 319 B.R. 495 (Bannkr. N.D. Tex. 2005); <u>Liberty Mutual Insurance Company v. Lone Star Industries, Inc.</u>, 313 B.R. 9 (D. Conn. 2004); <u>Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC</u>, 357 F.Supp.2d 529 (E.D.N.Y. 2004); <u>Partners v. Miles</u>, 2010 W.L. 1223141 (N.D. Cal. 2010).[9]  In all of these cases, courts have applied the well-pleaded complaint rule to cases involving jurisdiction pursuant to 28 U.S.C. § 1334, such as the case at bar.

It appears that in all of these decisions, the courts have uncritically accepted the proposition the well-pleaded complaint somehow applies to bankruptcy proceedings without explaining how or why it should.  Moreover, all but one of the above cited decisions post-date the <u>S.G. and A.E.</u> decision without making any mention of it.  It does not appear that in any of the above cited cases that a party argued against the application of the rule.  None of these cases indicate that the courts considered an argument to the effect that the well-pleaded complaint rule does not apply and then overruled that objection and applied the rule over objections.

In contrast to those courts which have cited the well-pleaded complaint rule, several Courts have explicitly rejected the well-pleaded complaint rule in a bankruptcy context. <u>Principal Life Insurance Company v. JPMorgan Chase Bank, N.D. (In re Brook Mays Music Company)</u>, 363 B.R. 801, 814-16 (Bankr. N.D.Tex. 2007); <u>Bank of America v. Brennan Title Company (In re Donoho)</u>, 402 B.R. 687, 696-97 (Bankr. E.D.Va. 2009); <u>Whiteny Lane Holdings,</u>

---

[9]  These cases are cited in the same order as submitted by McIntyre Land.  (10-3084, Doc. 27).  Citing is an overstatement–McIntyre Land merely photocopied a few pages from a treatise and the opinions in the above-mentioned cases and attached them as a supplement to their motion.

LLC v. Don Realty, LLC, 2009 WL 6315323 (N.D.N.Y Oct. 27, 2009) (Treece, M.J.) (following

holding of Brook Mays and finding jurisdiction), aff'd in part, rev'd in part, 2010 WL 1257879

(N.D.N.Y. Mar. 26, 2010) (reversed in part and remanded in part on other grounds); Hagan v.

Lawyers Title Insurance Corporation (In re Landamerica Financial Group, Inc.), 2011 W.L.

203986 (Bankr. E.D.Va. Jan. 21, 2011) (holding that the well-pleaded complaint rule does not

apply in the case of "related to" jurisdiction).

 The cases uncritically applying the well-pleaded complaint rule are decided incorrectly

for three independent reasons.  First, and most importantly, the cases cited by McIntyre Land

applying the well-pleaded complaint rule are contrary to the decision handed down by the

Supreme Court in American National Red Cross v. S.G. and A.E., 505 U.S. 247, 12 S.Ct. 2465,

120 L.Ed.2d 201 (1992).  As S.G. and A.E. is discussed above, that discussion need not be

repeated.  Since the United States Supreme Court has expressly limited application to the well-

pleaded complaint rule to cases "arising under" federal law, such as those  where jurisdiction is

predicated on 28 U.S.C. § 1331, cases which apply the rule to cases predicated on the separate

statutory jurisdictional power under§ 1334 are contrary to Supreme Court precedent and are

incorrect.

 The second reason why the well-pleaded complaint should not apply was set out cogently

in Brook Mays Music Company.  "To rely on the well-pleaded complaint rule alone in

interpreting section 1334 reads the "arising in" and 'related to' provisions out of section 1334."

Brook Mays Music Company, 363 B.R. 801, 815.  It is simply improper to permit the application

of a mere rule of interpretation to limit an act of Congress.  Bankruptcy jurisdiction, that is

jurisdiction pursuant to 28 U.S.C. § 1334, is determined by "whether the outcome of the

proceeding could conceivably have an effect on the estate being administered in bankruptcy." In re Lemco Gypsum, 910 F.2d at 788.  If one limits oneself to reading within the four corners of the complaint, one would have no way of determining whether a given civil action would or would not have any effect on a bankruptcy estate.  It would be a poor policy indeed if one could avoid the jurisdiction of a bankruptcy court by simply neglecting to mention it within the four corners of the complaint.

The third reason why the well-pleaded complaint rule cases cited by McIntyre Land are in error is that most of them misread the Supreme Court's decision in Rivet.  A review of that decision, and a further examination of 28 U.S.C. § 1334, will put the proper light on this problem.  In Rivet, a partnership held a leasehold interest in real property located in Louisiana. Rivet v. Regions Bank, 522 U.S. 470, 472, 118 S.Ct. 921, 923-24.  The partnership's leasehold interest was subject to two mortgages, the first in favor of Regions Bank and the second in favor of Rivet and three other individuals.  The partnership filed for bankruptcy and the trustee in bankruptcy sold the leasehold interest, free and clear of liens.  Regions Bank purchased the property from the trustee in bankruptcy.

Rivet later brought suit in State Court in Louisiana contending that, as a matter of Louisiana law, their mortgage was valid and should be enforced.  Regions Bank promptly removed the civil action to Federal District Court contending that the suit was precluded by orders of the Bankruptcy Court.  They contended jurisdiction was proper citing 28 U.S.C. § 1331 (providing that the District Court's have jurisdiction over civil actions arising under federal law). Rivet moved to remand, contending that her suit was brought solely under state law claims and that the federal courts lacked subject matter jurisdiction.  In Rivet, the Supreme Court applied the

24

well-pleaded complaint rule and determined that the claims were all brought under State law. The Bankruptcy Court's orders were raised by way of a defense, that they precluded the state law claims.

It is useful to digress and note what was not at issue. To begin, there was no discussion of 28 U.S.C. § 1334 in Rivet, as jurisdiction was predicated there solely on 28 U.S.C. § 1331.[10] Therefore, Rivet provides no direct support for the proposition that the well-pleaded complaint rule somehow applies to bankruptcy jurisdiction. Contra, Conseco, Inc., v. Adams (In re Conseco, Inc.), 318 B.R. 425, 428 (Bankr. N.D. Ill. 2004).

By the time the civil action was filed in State Court in Rivet, the bankruptcy case had concluded and there could have been no possible effect upon the estate because the bankruptcy estate had long since ceased to exist.[11] When deciding whether a bankruptcy court has jurisdiction to hear a proceeding, pursuant to 28 U.S.C. § 1334, one should look at the underlying bankruptcy proceeding and determine whether the given civil action will conceivably have an effect on it. This simply cannot be done if one limits of ones' knowledge to the four corners of a complaint.

---

[10] To be sure, the removing parties in Rivet could, and perhaps should, have alleged that the District Court had jurisdiction pursuant to 28 U.S.C. § 1334(b) as the case arguably "arose under" Title 11. As the "arising under" Title 11 prong is similar to the "arising under Federal law" provision of 28 U.S.C. § 1331. The Bankruptcy Court in Brook Mays Music allowed as much in its decision.

[11] Upon the filing of a petition in bankruptcy, an estate comes into existence. 11 U.S.C. § 541. Virtually all property that the debtor owns as of the date of the petition, except that which is exempt pursuant to § 522, becomes property of the estate. 11 U.S.C. § 541. During the administration of the estate, the Trustee sells, abandons or otherwise administers property of the estate. 11 U.S.C. § 704(a)(1), (9). At the conclusion of the administration of the estate, with exceptions not relevant here, the Trustee closes and case and any residual property is abandoned back to the debtor. 11 U.S.C. § 554(c), 350. Bankruptcy Court jurisdiction generally centers upon what happens to property of the estate from the date of the petition until the time the estate is closed.

### III. CONCLUSION

The Court denies the motion to stay pending interlocutory appeal filed by McIntyre Land. To obtain a stay, McIntyre Land must satisfy all elements of two different tests. First, to obtain a stay pending appeal, McIntyre Land must satisfy the four part test to obtain a stay pending an appeal of any kind. As set forth above, it fails on three of the four elements. First, it has failed to show that it has a probability of success on the merits. The Bankruptcy Court has subject matter jurisdiction because the complaint could have an impact on property of the estate. As it has subject matter jurisdiction, the motion to remand is properly denied. If one were to concede for a moment that McIntyre Land in fact could show a probability of success on the merits, the motion would nevertheless have to be denied for the failure to make any showing of irreparable harm. Furthermore, concerns of public policy, to the extent they apply here, weigh against a stay.

Moving on to the three part test, which applies to stays pending interlocutory appeal, McIntyre Land fails on all three prongs. McIntyre Land has failed to identify a controlling question of law, as that term is defined in the case law. At most, it argues merely that the Court has incorrectly applied established law to the facts of this case. If such questions could be the subject of interlocutory appeal, litigation would become interminable. As there is no controlling question of law, it necessarily follows that there is no substantial ground for difference of opinion. At most, McIntyre Land has cited a few scattered cases, none with precedential effect here, which have, improperly it is submitted, decided a mere rule of interpretation in differing manners. As a final matter, immediate appeal–if allowed–would not advance the ultimate determination of this case. The underlying claims brought by McIntyre Land, as well as the

counterclaims brought by BB&T, have to be determined somewhere. By dividing the case between two courts, as is sought by McIntyre Land, would multiply proceedings and confuse the issues. The ultimate determination of this case would be frustrated rather than advanced. To prevail on its motion for stay, McIntyre Land must establish all seven elements set forth above. For the reasons set forth above, it has failed on six of the seven elements.

Done this 14th day of April, 2011.

/s/ William R. Sawyer
United States Bankruptcy Judge

c: Scott M. Speagle, Esq.
   Michael A. Fritz Sr., Esq.
   Clifton C. Mosteller, Esq.
   Charles C. Simpson III, Esq.
   Jenna M. Bedsole, Esq.
   Michael B. Odom, Esq.
   Leonard N. Math, Esq.
   Christopher L. Hawkins, Esq.

27